# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BOARDROOM ENTERTAINMENT MKE, LLC,**

    Plaintiff,

-vs-                                    Case No. 15-C-53

**CITY OF MILWAUKEE,**

    Defendant.

# DECISION AND ORDER

Plaintiff Boardroom Entertainment MKE, LLC (Boardroom) filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant City of Milwaukee's (Milwaukee) ordinances requiring Boardroom to obtain a public entertainment license prior to offering adult entertainment at 730 North Old World Third Street, Milwaukee, Wisconsin (the property) violate the First and Fourteenth Amendments. This Decision and Order addresses Milwaukee's motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing the action for failure to state a claim. (ECF No. 19.)

Portions of challenged ordinances have been amended since the filing of this action, so any disputes over the version of those ordinances in effect at the time this action was filed have been mooted. *See MacDonald*

*v. City of Chi.*, 243 F.3d 1021, 1025 (7th Cir. 2001). Instead, the Court addresses the current versions and has taken judicial notice of the Ordinances as amended.[1] *See Driebel v. City of Milwaukee,* 298 F.3d 622, 630 n.2 (7th Cir. 2002) (taking judicial notice of portions of the Milwaukee Police Department Manual of Rules and Regulations); *see also Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir. 1977); *Demos v. City of Indianapolis,* 302 F.3d 698, 706 (7th Cir. 2002) ("The judicial notice issue is settled, because a district court can always rely on public statutes"). Thus, the Court has disregarded the affidavit of Assistant City Attorney Adam B. Stephens ("Stephens") with attached copies of Chapters 108 and 85 of the Milwaukee ordinances regarding public entertainment premises and regarding license and permit procedures, respectively. (ECF No. 23, 23-1, 23-2.)

---

[1] In order for a fact to be subject to judicial notice, it must be one "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts strictly adhere to these criteria because "the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1083 (7th Cir.1997) (citation omitted).

## *Background*

Boardroom's Complaint alleges that the public entertainment ordinances impose an unconstitutional prior restraint that violates the First Amendment as applied to the states pursuant to the Fourteenth Amendment.[2] The Complaint further alleges that some portions of Milwaukee Code of Ordinances ("MCO") Chapter 108 violate the First Amendment because they do not impose any time constraints on the licensing decision.

Boardroom also alleges that various subsections of Chapter 108 are vague and indefinite because: (1) they lack objective criteria for a license's issuance or denial; (2) they allow the license to be denied for reasons that are arbitrary and capricious; (3) the hearing procedures allow Milwaukee to introduce evidence on matters that are vague and indefinite; (4) the conditions and standards that Milwaukee may impose on such licenses are vague and vest unbridled discretion with Milwaukee; (5) the license procedures do not provide for prompt judicial review; (6) the license scheme fails to serve a substantial governmental interest and is not narrowly

---

[2] The Fourteenth Amendment's Due Process Clause applies the First Amendment's protections to the states. *Ben's Bar, Inc. v. Vill. of Somerset,* 316 F.3d 702, 707 (7th Cir. 2003).

- 3 -

tailored to serve any such interest; and (7) the Milwaukee ordinances were adopted with a predominantly censorial purpose and without any evidence or factual basis indicating they serve a substantial governmental interest. Boardroom also alleges that Milwaukee's ordinances regulating public entertainment fail to do so by the least restrictive means available, fail to provide for adequate alternative avenues of communication, and are unconstitutional on their face as applied to Boardroom.

Count one seeks declaratory judgment finding that the subject ordinances are preventing Boardroom from commencing the operation of a lawful business and are unconstitutional on their face and as applied. Count II seeks a permanent injunction barring Milwaukee from applying its unconstitutional ordinances against Boardroom in whole or in part. Boardroom sought a temporary restraining order/preliminary injunction which was denied because it had not addressed the bond requirement of Fed. R. Civ. P. 65(c). (ECF No. 11.)

### *Standard for Judgment on the Pleadings*

A Rule 12(c) motion will only be granted if the moving party is able to demonstrate that there are no material issues of fact to be resolved. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th

Cir. 1998). Rule 12(c) motions are reviewed under the same standard as Rule 12(b) motions, so the facts set forth in the Complaint are viewed in the light most favorable to the non-moving party. *Id.*

The pleading must include more than mere legal conclusions or a recitation of the cause of the action's elements, but it does not require detailed factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The pleading must meet a plausibility threshold; mere possibility is not enough. *Id.* at 570. Plausibility means there are enough facts in the complaint for a reviewing court to draw a reasonable inference that the pleader is entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Some pleaded facts must support the claim. *Id.*; *McCauley v. City of Chi.,* 671 F.3d 611, 616-17 (7th Cir. 2011); *Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010).

The complaint must set "forth facts sufficient to support a cognizable legal theory." *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1073 (7th Cir. 2013). Judgment should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009).

- 5 -

### *Relevant Facts[3]*

Boardroom entered into a 29-year lease for the first floor of the property, and it intends to operate a cabaret which will offer public entertainment—including adult entertainmentthe retail sale of alcoholic beverages, and the incidental sale of other items. Boardroom obtained a license from Milwaukee to serve alcoholic beverages at the property.

On January 14, 2015, Boardroom opened for business, offering alcoholic beverages pursuant to its liquor license. That day, eight to ten Milwaukee police officers entered, walked through the entire property, and told its manager that the business lacked the required paperwork for operation. This disrupted the business and disturbed Boardroom's customers. Boardroom has not yet offered any entertainment at the property. However, Milwaukee, through Stephens, advised counsel for Boardroom that it would close the business and revoke its liquor license if Boardroom offers adult entertainment to the public.

There are several licensed Class B Tavern and Public Entertainment Premises in Milwaukee wherein patrons may observe erotic

---

[3] The relevant facts are based on the factual allegations of the Verified Complaint, which are accepted as true, and the factual allegations of the Answer.

- 6 -

dance entertainment while consuming alcoholic beverages. Three of these locations are in or near downtown: Art's Performing Center, 144 East Juneau Avenue; Solid Gold Gentlemen's Club, 813 South 1st Street; and Ricky's on State, 2601 West State Street.

## *Analysis*

Milwaukee maintains that Boardroom's action should be dismissed on its pleadings. It states that its public entertainment premises ordinance, contained in MCO Chapter 108, is a constitutional time, place and manner restriction that regulates facilities open to the public in order to reduce or avoid the common negative secondary effects those facilities have on a surrounding neighborhood by attracting crowds of patrons. Milwaukee cites *Blue Canary Corp. v. City of Milwaukee,* 251 F.3d 1121 (7th Cir. 2001) and *Six Star Holdings, LLC & Ferol, LLC v. City of Milwaukee*, 932 F. Supp. 2d 941 (E.D. Wis. 2013).

Boardroom asserts that the subject ordinances are prior restraints that violate the First Amendment as applied to the states pursuant to Fourteenth Amendment. Boardroom does not describe the nature of its intended adult entertainment. However, the Supreme Court has found that "nude dancing . . . is expressive conduct, although . . . it falls only

- 7 -

within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000).

The parties' positions arise from the history underlying the First Amendment and the grave dangers of prior restraints on speech. "In the England of Shakespeare's day and indeed for centuries afterwards, a play could not be exhibited in a theater without a license from the Lord Chamberlain. That was a classic prior restraint." *Blue Canary Corp.,* 251 F.3d at 1123. As explained in *Blue Canary*,

> "prior restraint" . . . mean[s] censorship—an effort by administrative methods to prevent the dissemination of ideas or opinions thought dangerous or offensive. The censor's concern is with the content of speech, and the ordinary judicial safeguards are lacking. "Prior restraints" that do not have this character are reviewed under the much more permissive standard applicable to restrictions merely on the time, place, or manner of expression. *See, e.g., MacDonald v. City of Chi.,* [243 F.3d 1021, 1031 (7th Cir. 2001)]; *Thomas v. Chi. Park Dist.,* [227 F.3d 921, 923-24 (7th Cir. 2000]. Permit requirements are routinely imposed on the use of public parks and other public spaces for expressive uses, including entertainment and political demonstrations . . .

*Id*.

If an ordinance is content-based, it is evaluated under strict scrutiny and is presumptively invalid. On the other hand, if an ordinance is

- 8 -

content-neutral,[4] the less-demanding intermediate scrutiny standard will be applied. *See Bens Bar,* 316 F.3d at 723; *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix,* 779 F.3d 706, 711 (7th Cir. 2015). A content-neutral restriction must be narrowly tailored to serve a substantial state interest while not unreasonably limiting alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47 (1986).

The text of the ordinance, any preamble or express findings of the common council, and studies and information of which the members of the common council were clearly aware are relevant in determining whether the ordinance targets the content of the expression or the negative secondary effects. *Ben's Bar,* 316 F.3d at 723 n.28. While a municipality need not conduct new studies or produce evidence independent of that already generated by other cities, there still must be some reasonably relevant evidentiary basis for a municipality's action. *See Joelner v. Vill. of Wash. Park, Ill.,* 378 F.3d 613, 624 (7th Cir. 2004).

By chapter 108, Milwaukee intends to regulate public entertainment which it defines broadly as:

---

[4] The issues in this case were briefed before the Supreme Court issued its most recent decision on content-neutrality, *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2228 (2015).

- 9 -

> *[A]ny entertainment of any nature or description to which the public generally may gain admission, either with or without the payment of a fee. Any entertainment operated commercially for gain by membership, season ticket, invitation or other system open or offered to the public generally shall be deemed to constitute a public entertainment*. This definition includes dances, dancing by patrons to prerecorded or live music, dancing by performers for or without compensation, shows and exhibitions provided for a fee including plays, skits, musical revues, children's theater, dance productions, musical concerts, opera and the production or provision of sights or sounds or visual or auditory sensations which are designed to or may divert, entertain or otherwise appeal to members of the public who are admitted to a place of entertainment, which is produced by any means, including radio, phonograph, jukebox, television, video reproduction, tape recorder, piano, orchestra or band or any other musical instrument, slide or movie projector, spotlights, or interruptible or flashing light devices and decoration. . . .

Ordinance § 108-3 (Sept. 22, 2015) (Emphasis added). The ordinance regulates entertainment that is open to the public, without regard to the message intended to be conveyed through the medium.

The Milwaukee common council has expressed its regulatory purpose in the findings of MCO § 108-1:

> [P]ublic entertainment premises promote urban vitality and enrich people's lives through artistic, cultural and recreational entertainment. *However, various public entertainment premises can also be a source of excessive noise and litter, large and unruly congregations of people, traffic and parking congestion that adversely affect the surrounding neighborhood and the health, safety and welfare of the people of the city*.

- 10 -

> This chapter is established pursuant to the responsibility of the common council to protect the freedom of speech and expression guaranteed under the United States and Wisconsin Constitutions, *to legislate and license for the protection of the health, safety and welfare of the people of the city and to avoid or diminish the negative secondary effects that can result from these operations.*

(Emphasis added). Chapter 108's express purpose is to regulate public entertainment in order to dodge or reduce its harmful secondary effects, including inordinate noise and refuse, unwieldy and disruptive concentrations of people and traffic, and overcrowded parking.

When faced with such a legislative justification, the Court of Appeals for this Circuit has "presume[d] that the government did not intend to censor speech, even if the regulation incidentally burdens particular instances of expressive conduct." *Foxxxy Ladyz,* 779 F.3d at 711 (citations omitted). This ordinance *may* be upheld under the secondary effects rationale. *See Six Star Holdings,* 932 F. Supp. 2d at 949.

Milwaukee suggests that the Court should uphold the secondary effects findings at this stage of the proceedings, relying upon *Six Star Holdings.* However, that non-binding district court decision was issued on the parties' motion for summary judgment and a more complete record. Milwaukee must "produce some specific, tangible evidence establishing a

- 11 -

Case 2:15-cv-00053-LA   Filed 01/20/16   Page 11 of 18   Document 25

link between the regulated activity and harmful secondary effects." *Foxxxy Ladyz,* 779 F.3d at 715.

The ordinance is not content-based and is evaluated under the intermediate scrutiny standard. As in *Blue Canary,* 251 F.3d at 1123, Boardroom's contention that chapter 108 is a prior restraint is a "red herring." To determine whether an ordinance serves a substantial state interest, the court examines the "quality and quantum of evidence" the city relied on and whether that research reasonably links the regulated activity to the adverse secondary effects. *G.M. Enters., Inc. v. Town of St. Joseph, Wis.,* 350 F.3d 631, 638-39 (7th Cir. 2003). A municipality can rely on any relevant information, including judicial decisions, land use studies, police reports, news articles, and affidavits of investigators. *See Ben's Bar*, 316 F.3d at 725 (upholding summary judgment finding that the village's evidentiary record of judicial decisions and studies and reports from different cities fairly supported its rationale). "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of*

- 12 -

*Renton,* 475 U.S. at 51-52. The regulating body is not required to rely on research that targets the exact activity it wants to regulate. *G.M. Enters.*, 350 F.3d at 639.

Here, Milwaukee may properly rely on *Blue Canary's* determination that there was not "anything amiss in the City's taking into account . . . the character of the entertainment served with its drinks." *Blue Canary*, 251 F.3d at 1123. *Blue Canary* held that Milwaukee's impairment of First Amendment values was slight to the point of being laughable, "since the expressive activity involved in the kind of striptease entertainment provided in a bar has at best a modest social value and is anyway not suppressed but merely shoved off to another part of town, where it remains easily accessible to anyone who wants to patronize that kind of establishment." *Id.* at 1124. Based on the analysis in *Blue Canary*, which addressed a similar Milwaukee ordinance, the Court concludes that Milwaukee has established a substantial governmental interest in regulating the harmful secondary effects of public entertainment, including inordinate noise and refuse, unwieldy and disruptive concentrations of people, and traffic and overcrowded parking. *See also Six Star Holdings,* 932 F. Supp. 2d at 948.

**Lack of Time Constraints on Decision**

Citing § 108-5.1-b, Milwaukee asserts that the public entertainment permit ordinance is constitutional because it imposes time constraints on the permit decision. As amended effective October 9, 2015, § 108-5.1-b provides:

> [T]he common council shall approve every application for a new public entertainment premises license or for a deviation from the type of entertainment specified on a previously-approved plan of operation within 60 days after the city clerk certifies that the application is complete, *unless the application is denied in writing by the common council following a licensing committee hearing conducted in accordance with the procedures of ch. 85.* The August common council recess shall not be included when determining the 60-day period. The 60-day provision shall not apply if the application relates to a premises for which one or more other licenses subject to the licensing procedures of ch. 85 are sought or held, in which case the timeline set forth in ch. 85 applies.

(Emphasis added.) Milwaukee maintains that any license must be issued within 60 days of completion of an application.

However, Milwaukee has not addressed the question of time constraints on a decision when a hearing has been held and there is a possibility of denial. *See* Ordinance §§ 85-2.7; 85-5. In particular, Ordinance § 85-2.7-6 provides that the "committee may make a

- 14 -

recommendation immediately following the hearing or at a later date." The ordinance does not place any temporal limitation when that "later date" may occur. Live entertainment is an activity protected by the First Amendment. *See, e.g., Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991). An ordinance requiring persons to obtain a license before exercising a First Amendment right must include a time limit for the decision-maker to act. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 226-28 (1990); *see also BC Tavern of Kenosha, Inc. v. City of Kenosha,* No. 11-C-959, 2013 WL 592888, at *4 (E.D. Wis. Feb. 14, 2013) reconsideration denied in part, 2013 WL 3879911 (E.D. Wis. July 26, 2013). Thus, Milwaukee has not established that it is entitled to prevail on a portion of its motion.

**Vagueness and Indefiniteness**

Milwaukee contends that the public entertainment ordinance is not vague or indefinite because it provides that the common council may determine whether to approve a public entertainment premises license application by the considerations set forth in § 108-5-3, including review of the license applicant's completed plan of operation pursuant to § 108-5-3-b-7. It states that the objectively reasonable criteria for the common

- 15 -

council to weigh includes: hours of operation, number of proposed patrons, the legal occupancy limit of the premises, the number of off-street parking spots available at the premises, whether or not the premises will make use of sound amplification equipment, details regarding security provisions, and the license applicant's plans to ensure orderly appearance relative to litter and noise.

Boardroom counters that the ordinance is vague, citing the following application requirements: § 108-5-3-b-7-g which requires disclosure of plans as to "the orderly appearance and operation of the premises with respect to litter and noise" and "a description of how applicable noise standards will be met for the subject premises;" § 108-5-3-b-7-i which requires a description, "with particularity, of the type of entertainment, exhibition, music, dancing, singing, floor show or other performances to be held on the premises, in order for the common council to determine 'whether or not the applicant's proposed operations are basically compatible with the normal activity of the neighborhood in which the licensed premises is to be located;'" and § 108-5-3-b-9 which allows "[s]uch other reasonable and pertinent information the common council or the proper licensing committee may from time to time require."

Boardroom also cites the following with regard to matters to be considered at a licensing committee hearing:

> the appropriateness of the location and premises where the licensed premises is to be located and whether use of the premises for the purposes or activities permitted by the license would tend to facilitate a public or private nuisance or create undesirable neighborhood problems . . . [t]he fitness of the location of the premises to be maintained as the principal place of business, including but not limited to whether there is an overconcentration of businesses of the type for which the license is sought, whether the proposal is consistent with any pertinent neighborhood business or development plans, or proximity to areas where children are typically present . . . [a]ny other factors which reasonably relate to the public health, safety and welfare.

(ECF No. 21 at 8.)

The parties are focusing on two different facets of the Ordinances. Milwaukee focuses on the well-defined portions; Boardroom focuses on those portions which include terms such as "basically compatible," "normal," "reasonable," "pertinent" "undesirable," and "fitness" and allow more discretion.

Milwaukee states that the Complaint selects various provisions and labels them as vague and indefinite without explaining why Boardroom believes those adjectives are accurate. A complaint is sufficient if it sets "forth facts sufficient to support a cognizable legal theory." *Scherr,* 703

F.3d at 1073. However, a complaint should only be dismissed if "it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief," *see Buchanan-Moore,* 570 F.3d at 827. Milwaukee has not analyzed the challenged provisions; therefore, its motion for judgment on the pleadings as to the alleged vagueness of the foregoing Ordinance requirements is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Milwaukee's motion for judgment on the pleadings (ECF No. 19) is **DENIED.**

Dated at Milwaukee, Wisconsin, this 20th day of January, 2016.

                                    **BY THE COURT:**

                                    */s/ Rudolph T. Randa*
                                    **HON. RUDOLPH T. RANDA**
                                    **U.S. District Judge**